Mr. McGill. May it please the court, good morning. I'm Rob McGill. I represent the appellants, Home Services of America, BHH affiliates, and HSF affiliates. We have reserved five minutes for rebuttal. We have appealed the district court's order denying the motion to compel arbitration and requiring the Burnett claims to be heard in arbitration. Today we ask the court for two forms of relief. First, to reverse the district court and compel the Burnetts to arbitration. And second, to strike the class allegations of each putative class member who signed one of the Home Services entity's listing agreements. The basis for our request is to have the two forms of the delegation and provisions that have been provided in the listing agreement, this before the court. The decision below is inconsistent with what we believe is clear and well-developed Eighth Circuit precedent on arbitration issues. Specifically, this court and the United States Supreme Court have both delineated how express delegation clauses are to be enforced. The Rent-A-Center case in the United States Supreme Court has confirmed this. And then has confirmed in a trilogy of cases how delegation clauses incorporating AAA rules are to be enforced. Mr. McGill, this is Jeff Smith. Before we get to the incorporation consideration with the AAA, what is the agreement that your client has with the appellees? So, we have an arbitration agreement, which is a separate appendix 437. What is the contract that you have with the appellees? As I understand it, your client has no direct contract with the appellees and is not a signatory to the contract that contains the arbitration agreement. We are not a signatory. My clients are not a signatory to this particular listing agreement. And the basis for our claims is that specifically that the issue of whether our clients may enforce these specific provisions have been delegated to the arbitration. Well, doesn't that, wouldn't you have to have an arbitrator? Yes, we would and we believe that we do, your honor. Specifically, we have an arbitration agreement that says specifically that any controversy or claim between the parties to this contract. But you're not a party to the contract. Well, we're not a party to the contract, but we believe we have a right from the standpoint of equitable estoppel law to enforce the terms of our clients. Did the district court address the equitable estoppel argument? The district court did address the equitable estoppel argument, at least in part, but in the context of whether or not the equitable estoppel argument should and was delegated specifically to the arbitrator, we believe was not correctly decided. Specifically, we believe that the provisions that says that this particular arbitration agreement, that any controversy or claim of the parties to the contract, including interpretation and specifically enforcement, was delegated. The question of who can enforce specifically this contract has been delegated, as we see it, to the arbitrator. Counsel, I want to ask you about what I do as a different preliminary question, which is the waiver issue. You didn't brief it. We do have a footnote from the district court saying, essentially, I'm not going to decide it, but I'm going to make a bunch of findings anyways about waiver. So I'm wondering what your best response is to the fact that you've litigated this case for 17 months, or for sure over a year, and somehow you have not waived arbitration. Specifically, three or four things to respond. One, we confirmed specifically in our answer, in our affirmative defenses, that the claims were subject to an arbitration defense, and also we noted the same in our motion to dismiss response. As to the scope of this case, this case has a scope that's been very broadly played. There are claims in the case that have been made by our client, by our customers, Home Services of America, but also claims in the case made separately by REMAX, or against REMAX, against Keller Williams, and against Realogy. Those contracts, we have no contractual relationships with any of those three parties. So in terms of how the case has progressed, the case has progressed specifically with those different types of plaintiffs in the case. But here's my problem with that. You actually didn't even move for arbitration. You moved to actually send this to a different court in the Northern District of Illinois. Then you filed a bunch of papers, and you're right, you did mention the answer. I've tracked the entire procedural history. You mentioned it in the motion to dismiss, but then you go on after you mentioned it both times, and you set up a scheduling order and negotiate a scheduling order to have this case tried in court. And I can't figure out how that cannot be a waiver of your right to arbitration when you put the other party to so much work. Well, with respect to the work that was required, with respect to the claims that were pled, the claims that were proceeding against REMAX, Keller Williams, and Realogy, as well as our clients, to the extent that they were made by non-customers, went forward regardless. Specifically, they went forward with a case schedule, a motion to dismiss, and discovery. And with respect to those separate claims that were litigated, those claims that were grounded in separate listing agreements, those did go forward, and at least according to the plaintiffs, regardless of how our motion to dismiss went forward. And with respect to the record that was conducted out there, we did not have that record. We have not developed that record in terms of those details in the court below us. So, counsel, I'm wondering if you're going to at some point get to your argument about what your basis is for having the class claims discarded. What's your basis for that? I'm sorry, Roger. I had trouble hearing the question. There's something wrong with the audio, Roger. Can you hear me now? A little bit better, I think. Well, never mind. You can mute him. So, if I could return to one aspect, the parties to the agreement specifically, and with respect to the 11th Circuit case that we had mentioned specifically, the physician consortium case. The 11th Circuit in that case made a specific analysis that I think is apropos for review and consideration here, and that is the 11th Circuit said in the physician consortium case that a specific focus on the parties was not appropriate or reasonable under the circumstances, that instead the analysis should be made in terms of the specifics of the rights of the non-signatory to enforce or not based on the facts of the case. So, with respect to the questions about who are the parties to this particular agreement, we think physician's consortium is helpful guidance that could be put before the court for analysis. Separately, with respect to the issue of non-signatory enforcement, we believe that the court, you know, if this were to be considered by this court or to be considered by an arbitrator, either one of the analysis that holds is appropriate under the Hewitt decision that the Missouri Supreme Court made in 2015. And in that case specifically, as the court evaluated the right of a non-signatory to enforce the arbitration agreement, the focus was specifically on how the plaintiffs in that case had treated the defendants. And what the analysis was that there was a distinct analysis to the extent that there was a liability claim, it was broadly pled to include all defendants. To the extent that there was an arbitration claim, the argument was with respect to whether arbitration rights would apply. And the court in Hewitt said that was not appropriate and for its part decided that that party can and should under the circumstances of that case enforce specifically the non-signatory rights to the arbitration provisions. With respect to the motion to strike the class allegations, what's your basis for that? Can you give your best argument as to why we should do that? Yes, I can, Your Honor. With respect to the motion to strike the class allegations here specifically, we have the same form of listing agreement, I should say, that includes the arbitration provision in the contracts that were executed for the entire class period for the Reese-Nichols firm and the BHH firm as well. In the separate appendix, page 316 and page 441, we have the declarations which confirm the details of those specific listing agreements. And with respect to the operable language that we would point the court to for consideration is, again, the language, the operative language, that we focus on for our part is enforcement. And in terms of enforcement, in terms of delegation, the express delegation, we believe that enforcement was delegated specifically under the terms of these agreements and each of these agreements that we've referenced by virtue of these declarations. I've exceeded my time a bit, so if there are no further questions, I'll reserve for rebuttal. Thank you, Mr. McGill. Mr. Sear? Thank you. May it please the court. My name is Jeremy Sear. I'm representing the plaintiff's appellees, the Burnetts here. And as the questions earlier indicated, this is an unusual and easily addressed case. The motion below admitted, conceded up front, that they are not party to any contract with us. They said home services and neither the named plaintiffs nor any purported class member has any contract or direct relationship with home services. That would include any agreement to delegate arbitrability issues. They don't have any agreement with us. So the 11th Circuit in the Levine v. Herbalife case found that, you know, if you have no agreement, you certainly have no agreement to delegate arbitrability with the home services defendants. And it's also, in this case, involves a unique, narrow, very limited and unusual arbitration agreement. It's got four features that distinguish it from a lot of other cases. It's a very party-centric agreement. It uses the word parties seven times, at least, parties to the contract. At the end, right above the signature line, in bold, all capital letters language, it says that this may be enforced by the parties. It doesn't, you know, tell the Burnetts that this may be enforced. Counsel, what's your answer to the argument that, yes, you have an argument about who can enforce this, but that's an argument that needs to be made to the arbitrator? Sure. I mean, that's what the case is about. Who gets to decide the issue, right? Sure. And so there has to be an agreement to have an arbitrator. Arbitration is fundamentally a question of who gets to enforce the arbitration agreement. The argument is that who gets to enforce that agreement? Maybe somebody out in the street, maybe not. But that question is, I mean, the argument is that that question is one that the arbitrator has to decide, not the court. The very question of who is bound by the contract is a question for the arbitrator, is the argument, right? Correct. I understand. I think you've got, you know, on the merits, I think there's a lot of difficulties here about who can enforce this contract. But is that my business or is it the arbitrator's business? That's the number one case. Sure. And I'd like to cite two cases back to you that I think make clear that it's the court's prerogative to decide if there's an agreement at all. And that's the Henry Schein case and this court's case in Shockley versus Prime Lending, where there's all the, in Henry Schein, the Supreme Court used I think 16 times referred to the party's possessive contract, the party's decision to delegate arbitrability. It's very clear it was party focused, but that case involved a bilateral contract. There was no non-signatory. And the court also emphasized that to be sure, quote, before referring a dispute to an arbitrator, the court must determine whether a valid arbitration agreement exists. So that's the question for the court. Does a valid agreement with home services exist? And that question is easily answered because they conceded that below. They have no agreement with us. How about the Eckert case? Yeah, the Eckert case. Sorry, I was muted for a moment. What about the Eckert case? Sure. So the Eckert case has a, I think can be distinguished in a few different ways. One of which, it's a short case and it has a very unique procedural history there where the party, the party resisting arbitration actually drafted the arbitration clause and had been arbitrating for two years with the party seeking to continue the arbitration effectively. There were two separate arbitration agreements at issue. The first one was signed with an entity called Fisher I, and then ultimately FJM, a different but related entity, initiated a AAA proceeding against Eckert. And then shortly after that, those two parties, FJM and Eckert, made their own second arbitration agreement and proceeded for two years to arbitrate under that agreement, at which time suddenly Eckert professed befuddlement that this FJM entity, a stranger to their original contract, was arbitrating. They claimed that they'd been bamboozled and tried to stop the arbitration. So it's a little, it's not quite accurate to say that they were a non-signatory there. They were both, they were in fact party to an arbitration agreement. So I think it's factually distinguishable. It doesn't actually hold. But didn't we, we did characterize it, characterize it as a non-signatory trying to, I remember that language from the case, trying to enforce the arbitration agreement. We said, hey, consistent with what Judge Arnold was saying, that's for the arbitrator to decide whether the non-signatory can enforce it. Am I, am I wrong about the way we characterized it though? That's, that's the way that one sentence in the opinion reads, yes. And so another, so a second sort of way to distinguish it is the language there is very different from our language in that the language in the arbitration clause was that it referred to any dispute or claim arising out of or related to the contract. So in that situation, you can see sort of an argument that, look, Eckert, you drafted this, you wrote arising out of or related to, you didn't bound it by referring to parties to the contract. So you've effectively agreed in advance that the universe is a third-party beneficiary of this language and can, you know, is entitled to this delegation of arbitrability. Whereas here, it's bounded very carefully to the parties to this contract. It can only be enforced by the parties. There's even language that the result is only binding on the parties here too. So home services wouldn't even be bound by this result. And there's also the mutual bar on joining parties. So there's a lot of distinguishing features here that are not present in the Eckert case, which I think, again, procedurally isn't really about a non-signatory. They were, in fact, signatories to an arbitration agreement. I'd also like to, there's been some interest in waiver, and I think the waiver here is very clear. It was, as you, as you all pointed out, it was 305 days between filing our complaint and the motion to compel arbitration, during which time there was a motion to transfer venue, a motion to dismiss, significant discovery activity. Even the answer that they talk about, it was 105 days later that they finally moved to compel arbitration after filing that answer with the little footnote. And this court has case law that a reservation of rights is not an assertion of rights. So, I mean, they were aware of it from the beginning and prejudiced plaintiffs by engaging in vigorous litigation, multiple dispositive type motions that we had to brief, multiple discovery issues with them for 300 plus days. And I think under this court's cases, such as Hooper and Messina and Kelly v. Golden, it's a very clear waiver. And so the court below did not reach that. And, you know, it is ultimately a legal determination de novo for this panel, although factual findings can be reviewed for clear error. I think the factual record is clear enough that this panel could easily find waiver, but to the extent there's any question, then, you know, it can be remanded for factual findings to, in fact, be made. But I think it's relatively clear on this record that waiver occurred. This is Judge Smith. If we were to conclude that there was a contract to arbitrate and to submit any dispute to arbitration, wouldn't the waiver question be one that would be subject to arbitration? No. So every circuit court that has examined the issue of whether litigation conduct waiver is something that is delegated to an arbitrator or should be decided by courts has found that it should be decided by courts. We cite those cases in our brief. There is the Martin v. Asuda case out of the Ninth Circuit, as well as the First, Third, Sixth, and Eleventh and Fifth have all concluded litigation conduct waiver. Oh, my power just went out. I have one of these rolling blackouts, so I can't see you all, but can you all hear me? We can hear you. We can hear you. Okay, great. So, yeah, I'm unable to see you all or the clock at this point. You've got six and a half minutes left. Okay. That's quite unusual, but no. So, when the waiver is based on conduct before a court, the court is best placed to evaluate that, and there's no circuit court that has found that's something that should be delegated to an arbitrator. Well, our court in ProTech Industries 2004 case said that issues of waiver are issues of procedural arbitrability, presumptively for the arbitrator. That's an issue. So, that's not a litigation conduct waiver. That's a waiver of compliance with provisions in an arbitration agreement. And so, there's a couple good cases. From this summer, there was a case from the District of Minnesota that analyzed this issue and did not view that case as involving litigation conduct waiver. It's the Borup case. I believe we the Supreme Court's Howsam case also involved that. It's procedural compliance with, say, you have 30 days to initiate arbitration or something after such and such decision, and the issue is, did you timely do that? The arbitrator is best placed to evaluate compliance with procedural arbitration mechanisms. But the question is, what is the effect of your actions in front of a federal court over the last 305 days? The federal courts unanimously find that that's something for a federal court to determine and weigh in on. Well, and we've done that too. I know the Hooper case, the court decided whether litigation-based conduct was waiver, and we certainly have other cases where we've done it. We don't have an outright holding, but we certainly have done this in the past for the court to do it. My question's a little different. I don't know that it's particularly strong with respect to all of the other agreements and all of the other potential plaintiffs we have. So what do we do with that? Fair. And to be fair too, I'm not recalling that their brief really mentioned a whole lot about but I don't recall that being a feature in their appellate brief. So I'm not sure it's really before this court this time. I think that's something that's probably best left to the district court given the briefing, as I recall it. But I think first and foremost, though, the claims to arbitration by these, as to the absent class members, in my view, should fail because as they conceded, they don't have any agreement with these people. They don't have any But what about waiver itself? What about waiver itself with regard to the class members? Those class members weren't involved. You have all of these other claims. I mean, how can we claim waiver at this point with respect to all of the other cases other than Sitzer? True. I think, again, I don't know that it's really an issue presented before us, but I do believe that there is some case law that might suggest that without a certified class, it would be difficult to find a waiver as to the other folks in the putative class. So we would probably have to remand, even if we found waiver with regard to this particular case, we'd probably have to remand with respect to the rest of the class under your waiver argument if we agreed with you. True. That's the only basis on which you were agreeing with me. I believe that's right. I can't see my time, so I don't know how much time I have. You have two minutes and 40 seconds remaining. Okay. Thank you. And the other thing I want to emphasize, again, I mentioned the case earlier, but it's the Shockley v. Prime Lending case that I think, as with Henry Schein, makes it very clear that there's always an initial gateway role for a court to determine if the parties before it, the two parties before it, actually have an agreement to arbitrability, because the cases talk about how it's just a separate contractor agreement. And so that case involved an employee handbook and an employer and employee and whether or not the employee had accepted and agreed to the language you saw, allegedly, on this screen of the handbook. And, you know, they're kind of situated here similarly in that home services as to the employer there. They can point to some language on a piece of paper that says you're agreeing to arbitrate arbitrability, but the question for the court is, was a contract actually formed between these two parties? Was there offer acceptance consideration? And in that case, this court, this panel found, no, there was no contract formed, and so nobody could enforce it. And same here, they conceded below. They don't have any agreement with us, so that would include they don't have any agreement to arbitrate arbitrability. And I also want to note that I think Henry Schein embraces that principle, as does one of the cases it cited, the Belknap case of the Tenth Circuit, which rejected the holy groundless exception to delegations. And that case involved non-signatories also, and the Tenth Circuit, it was favorably cited by the Supreme Court, and Henry Schein there said, we think this is probably not a meritorious argument for arbitration as to the signatory defendant, but we have grounds to say it's wholly groundless. That's not the way we view the law. Arbitration is compelled as to the signatory, but it did not say that, hey, there are additional non-signatory defendants, and they were also seeking arbitration. And the Tenth Circuit did not say, oh, you also get the benefit of this. It went and analyzed, do you have an agreement with them? Are you entitled to enforce it? And the Supreme Court favorably cited that in Henry Schein. So I think that's, it's just not the case that a stranger to a contract can come into court and say, hey, there's delegation language over there in a contract the plaintiff is a party to. Everything now must go to the arbitrator. There has to be a finding that there's an actual agreement between the movement and the party resisting arbitration. And they've done that. Yes, Your Honor. So with respect to the questions about whose business is it, the arbitrator or the courts, we go back to the Eckert-Woodall decision, specifically, that this circuit said specifically that whether FJM properties as a non-signatory could use the arbitration provision to compel signatory Eckert-Woodall to arbitrate, that question we think was resolved clearly by the Eckert decision. Counsel, there are a couple of distinguishing characteristics here versus Eckert. I just want to give you a chance to respond. One is that the narrower language in these agreements, limiting it to the party, it's not anything arising out of the agreement, which it was a language, you know, I'm summarizing with the language in Eckert. So it's much narrower. You also have not just a incorporation of AAA rules, but you have this sort of catch-all for such other neutral arbitrator agreed to by the parties. And then finally, you don't have the adoption of a particular set of AAA rules. All of three of those things, I know I'm giving you a list here, which is a little hard or run out of time. All three of those things are different from Eckert. So in your view, why don't those distinguish Eckert? Well, several things. I would start with the Hewitt decision. And in terms of the Hewitt, when the Supreme Court of Missouri and Hewitt analyzed the specifics here, they went very, they went in-depth to the nature of the allegations made in that complaint. And specifically, the Hewitt decision, as the court knows, decided that you can't parse your arguments for litigation purposes and separately for arbitration purposes. So that's the first point. On the AAA distinction or the series of AAA rules that you have referenced, the AAA itself would decide which rules govern specifically. And I think with respect to what we've set up brief, there are only two conceivable applicable sets of AAA rules, neither of which present a conflict to the proceedings that would occur here. So that's with respect to those details. In terms of the delegation, the contours of delegation under the Eckert-Wardell decision of the court, what we look at is what was delegated, what's the scope of the delegation here. And in terms of the express delegation portion of the Burnett's agreement, interpretation and enforcement are handed to the arbitrator here. There's no question, as we see things, that under this question of, you know, whose business is it, the arbitrator would have a fully developed record on each of these issues, on who is entitled to enforce, that is equitable estoppel. And separately, has there been a waiver by litigation conduct? And specifically, we would reference the court to the Republic of Ecuador case from the Second Circuit. And they said expressly that the decision of whether to agree to the litigation constituted a waiver was in fact delegated. Two other cases that I would point out quickly to this court, the Protech Industries case, we think this does confirm that with respect to the presumption of the delegation, we think that's and then specifically, we also cited on brief, the Trans-America decision where the court applied the Housman decision to the question of whether a party waived the right to arbitrate. So I hope that's responsive to your questions. If there are no further questions, I see that my time has expired. Mr. McGill. Thank you also, Mr. Seward. The court appreciates both counsel's presence before the court today in our virtual forum, and the briefing that you've submitted for us to review. I will take the case under advisement and render decision in due course. Counsel may be excused. Thank you. Thank you.